UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARTHS HEALING, INC., et al., | Case No. 25-cv-01428-VC |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** |
| SHENZHEN SMOORE TECHNOLOGY CO. LTD., et al., | Re: Dkt. Nos. 67, 68 |
| Defendants. | |

The motions to dismiss are granted with respect to the Sherman Act per se claim and all claims brought by Summit. The motions are denied with respect to the Sherman Act rule of reason claim and the defendants' arguments regarding federal antitrust standing, the interstate commerce requirement, and the statute of limitations. Discovery can proceed immediately on the surviving claim. This ruling assumes that the reader is familiar with the facts, the applicable legal standards, and the arguments made by both parties.

*Per se claim*. The plaintiffs have not pled enough facts to allege the existence of a horizontal agreement between the distributors. The plaintiffs do allege the following: that Smoore entered into agreements with the distributor defendants that required each distributor to exclusively sell Smoore vapes and prohibited each distributor from selling Smoore vapes below a specified price floor or competing with other distributors for their customers. Under the agreements, any customer who wanted to switch distributors would need to seek written permission from Smoore to do so. Each distributor was fully aware that the other Smoore distributors had also agreed to the same terms.

But to establish a horizontal agreement between the competing distributors, it seems that something more is needed. A horizontal agreement exists only if the distributors agreed amongst themselves to the restraints (as opposed to making individual agreements with Smoore). *See In re Musical Instruments and Equipment Antitrust Litigation*, 798 F.3d 1186, 1191 (2015). And it is not enough to plead that the distributors consciously but independently agreed to the same terms with Smoore—as the Ninth Circuit explained in *In re Musical Instruments*, "mere parallel conduct is as consistent with agreement among competitors as it is with independent conduct in an interdependent market," because businesses often base their actions on the anticipated reactions of their competitors. *Id.* at 1193-94. Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the plaintiffs must plead enough facts to "raise[] a suggestion" that the parallel conduct came out of a preceding agreement between the distributors. *Id.* at 557. The plaintiffs have not done that here: based on the facts in this complaint, it is equally plausible that each distributor independently decided to join Smoore's agreement as it is that the distributors conspired together to agree to the restraints.

The Supreme Court's decision in *Interstate Circuit v. United States*, 306 U.S. 208 (1939), does not require a different conclusion. In that case, the Court inferred a horizontal agreement between movie distributors based in part on evidence that each distributor knew the others were considering the pricing restraints proposed by two movie exhibitors and that they knew the restraints would only benefit them if the others agreed too. *Id.* at 222. But there was additional evidence that helped the Court infer that the distributors had agreed amongst themselves to adopt the restraints. For one, the price restraints were a "radical departure" from the distributors' prior practices, which suggested that they would have been too risky to adopt absent an agreement.[1] *Id.* Second, the Court pointed to evidence that the ultimate terms of the restraints (which were the same for each distributor) were developed after negotiations between the distributors and

---

[1] The Seventh Circuit relied on the same "abrupt shift" reasoning in holding that the Federal Trade Commission permissibly inferred the existence of a horizontal agreement between toy manufacturers to refrain from selling to certain Toys-R-Us competitors. *Toys "R" Us, Inc. v. Federal Trade Commission*, 221 F.3d 928, 935-36 (2000).

exhibitors, which suggested that the distributors were not independently negotiating with the exhibitors. *Id.* at 218, 222. The complaint in this case does not have any similar allegations that would suggest that the distributors did not merely independently agree with Smoore to the restraints.

Dismissal of the per se claim is with leave to amend, and any amended complaint must be filed within 21 days. However, the plaintiffs may wish to simply proceed with the current version of the complaint, in which case they can seek leave to add back a per se claim if discovery on the surviving claim gives them a good faith basis to believe they can allege one.

*Rule of reason claim*. The defendants argue that the complaint fails to allege a Section 1 rule of reason claim because it does not adequately plead that the agreements between Smoore and the distributor defendants caused harm to competition. To adequately plead injury to competition, the plaintiffs must "sketch the outline" of the injury with enough supporting factual detail to raise a reasonable expectation that discovery will reveal evidence of an injury. *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (2012) (quoting *Les Shockley Racing, Inc. v. National Hot Rod Association*, 844 F.2d 504, 508 (9th Cir. 1989)). Although it is close, the complaint pleads enough to satisfy that standard.

The complaint alleges that Smoore manufactures between 70 and 80 percent of all unfilled vapes sold in the United States, and Smoore and the distributor defendants—who themselves are the dominant distributors of unfilled vapes in the United States—agreed that the distributors would sell Smoore's vapes exclusively. Those allegations together suggest that the agreements between Smoore and its distributors make it difficult for other manufacturers to compete with Smoore at a significant scale and undercut Smoore's overpriced vapes. The complaint also alleges that Smoore's patent litigation against would-be competitor manufacturers has led some of its competitors to drop out of the market, which further suggests that it is difficult for other manufacturers to undercut Smoore's vapes. Although the complaint could have done a better job explaining why the agreements injures competition between vape brands, it alleges just enough to create a reasonable expectation that there is an injury.

3

The defendants also argue that the allegations about the agreements between Smoore and the distributors are too vague to make a conspiracy plausible. But the allegations, which are summarized earlier in this ruling, are detailed enough to plausibly suggest that Smoore conspired with its distributors to sell the vapes above minimum prices, divide up customers, and to sell only Smoore vapes.[2]

Finally, the distributor defendants argue that the relevant product market identified in the complaint is implausibly narrow. The complaint alleges the relevant market is the wholesale market for unfilled cannabis vapes in the United States, because users do not readily substitute between vapes and other methods of consuming cannabis, and because the wholesale market for unfilled vapes is nationwide. At least at this stage of the case, the complaint alleges a plausible relevant market. *See Newcal Industries, Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1045 (2008).

*Antitrust standing*. The defendants argue that the plaintiffs lack antitrust standing to bring their federal claims because cannabis trade is illegal under federal law. Indeed, the Ninth Circuit has suggested that an antitrust claim that seeks to protect competition in an illegitimate market may not be permissible. *PharmacyChecker.com LLC v. LegitScript LLC*, 137 F.4th 1031, 1041 n.9 (2025); *Alaska Airlines Inc. v. Carey*, 395 Fed.Appx. 476, 478-79 (2010). But the market in which the plaintiffs are allegedly being injured is the market for vapes that have not yet been filled with cannabis, which is a legal market under federal law. The illegality of cannabis does not prevent the plaintiffs from enforcing federal antitrust law in the legitimate market for unfilled vapes.

*Interstate commerce requirement*. Similarly, the distributor defendants argue that the plaintiffs can't plead that their conduct harmed interstate commerce because there is no legal

---

[2] Smoore also argues that it is economically implausible that Smoore would conspire with its distributors to raise prices when it could bypass its distributors altogether and sell its products at higher prices on its own. But it is plausible that Smoore would prefer to at least partially rely on distributors, and conspiring to raise prices could make selling Smoore vapes more economically attractive to its distributors and thereby reduce their interest in selling other manufacturers' vapes.

interstate cannabis market. But, as explained above, the relevant market here is the market for unfilled vapes, which is a legitimate interstate market.

*Plaintiff Summit's claims*. The plaintiffs do not dispute that Summit's current suspended tax status prohibit it from bringing its claims. Summit's claims are dismissed, and the plaintiffs may seek leave to add Summit's claims back in once its corporate status is revived, or they may seek leave to add a different California plaintiff.

*Statute of limitations*. The defendants argue that the plaintiffs' proposed class period from December 1, 2016, to the present is time-barred because the statute of limitations for all claims is four years. The statute of limitations is an affirmative defense rather than an element of the plaintiffs' claim. It therefore generally does not support dismissal on a Rule 12(b)(6) motion unless it is clear from the face of the complaint that the plaintiffs cannot prove that the claims are timely or that the statute was tolled. *See A.B. by & Through Turner v. Google LLC*, 737 F. Supp. 3d 869, 877-78 (N.D. Cal. 2024). Here, there is at least a potential factual dispute as to whether the statute was tolled, and the correct class period will be more appropriately resolved at the class certification stage of this case.

**IT IS SO ORDERED.**

Dated: December 2, 2025

_____
VINCE CHHABRIA
United States District Judge

5